**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 26-cr-00036-APM** |
| **v.** | : | |
| | : | |
| **CARTER CAMACHO,** | : | |
| | : | |
| **Defendant.** | : | |

**STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA**

## I.    SUMMARY OF THE PLEA AGREEMENT

The Defendant agrees to admit guilt and plead guilty to the criminal Superseding Information charging the Defendant with Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1)(A)(i) (Count One), and Receipt or Distribution of Visual Depictions of Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2)(B) (Count Two). The Government will cap its allocution at the bottom of the Sentencing Guidelines range as ultimately calculated and adopted by the Court.

## II.    ELEMENTS OF THE OFFENSES

Count One

The essential elements of the offense of Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1)(A)(i), each of which the Government must prove beyond a reasonable doubt are:

1. The defendant knowingly entered the Capitol Grounds or any of the Capitol Buildings; and

2. While the defendant was on the Capitol Grounds or any of the Capitol Buildings, the defendant knowingly carried or had readily accessible a firearm, dangerous weapon, explosives, or an incendiary device.

Count Two

The essential elements of the offense of Receipt or Distribution of Visual Depictions of Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2)(B), each of which the Government must prove beyond a reasonable doubt are:

1. The Defendant knowingly received or distributed a visual depiction using any means or facility of interstate commerce;

2. The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

3. Such visual depiction was of a minor engaging in sexually explicit conduct;

4. The Defendant knew that such visual depiction was of sexually explicit conduct and that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

## III.    PENALTIES FOR THE OFFENSES

Count One

The penalty for the offense of Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1)(A)(i), is as follows:

1. A maximum term of imprisonment not greater than 5 years;

2. A fine of $250,000 or twice the pecuniary gain or loss of the offense;

3. A term of supervised release of not more than three years, after any period of incarceration; and

4. A special assessment of $100.

Count Two

The penalty for the offense of Receipt or Distribution of Visual Depictions of Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2)(B), is as follows:

1. A sentence of imprisonment of not less than 5 years and not more than 20 years;

2

2. A fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3);

3. A term of supervised release of not less than 5 years or up to life, pursuant to 18 U.S.C. § 3583(k);

4. Mandatory restitution under 18 U.S.C. § 3663A and 18 U.S.C. § 2259;

5. An assessment under 18 U.S.C. §§ 3014 and 2259A;

6. An obligation to pay any applicable interest or penalties on fines and restitution not timely made; and

7. A special assessment of $100.

## IV.    STATEMENT OF FACTS

The Defendant's Conduct on February 16, 2026

1. On February 17, 2026, at approximately 12:04 p.m., the Defendant parked a white Mercedes SUV at Maryland Avenue Southwest, between First and Third Streets, in the District of Columbia.

2. CCTV footage reviewed by U.S. Capitol Police ("USCP") shows that, at approximately 12:07 p.m., the Defendant exited from the driver's seat of the white Mercedes SUV and began running toward the United States Capitol (the "Capitol") carrying an object later determined to be a firearm. The Defendant was wearing apparent body armor and camouflage-style clothing.

3. The Defendant approached the south steps on the western side of the Capitol and began ascending the stairs, which are located within Capitol Grounds.

4. As the Defendant climbed the stairs, a uniformed USCP officer asked the Defendant what he was carrying in his hand.

5. The Defendant raised his right arm, in which he clutched a firearm.

6.    USCP officers ordered the Defendant to halt and lay on the ground. He immediately complied.

7.    USCP officers recovered the weapon, which was determined to be a Mossberg Model 88 12-gauge shotgun, bearing serial number MV2154777. The shotgun was loaded with seven rounds in the tube and one in the chamber. The safety was off. An additional 17 rounds of ammunition were located in a carrier attached to the stock of the shotgun.

8.    USCP officers secured the Defendant in handcuffs. They discovered a two-way radio on his person.

9.    The Defendant told USCP officers that his name was CARTER CAMACHO. He also told USCP officers that he was just there to talk to a Member of Congress.

10.    USCP officers and special agents reviewed CCTV footage and were able to trace the Defendant's path back to the white Mercedes SUV.

11.    USCP officers and special agents responded to the location of the white Mercedes SUV.

12.    The driver's door of the white Mercedes SUV was open. Responding officers conducted a protective sweep of the white Mercedes SUV to secure it and ensure that no other persons or dangerous objects were present.

13.    USCP officers and special agents were able to see what appeared to be a soft-sided rifle case in the passenger compartment of the white Mercedes SUV. In addition, USCP officers and special agents were able to observe through the white Mercedes SUV windows into the tailgate area, where they saw a cardboard box with labels indicating the name "Mossberg," which is a manufacturer of firearms, including shotguns.

14.    From the time that the white Mercedes SUV was parked to the time that USCP officers conducted a protective sweep of the white Mercedes SUV, no other person exited or otherwise interacted with the white Mercedes SUV.

15.    A USCP special agent conducted a check of the vehicle registration, which indicated that the white Mercedes SUV was registered to an individual with the same last name as the Defendant.

16.    In addition, a fixed blade knife was found on the ground approximately forty feet from the white Mercedes SUV in the Defendant's path of travel between the white Mercedes SUV and the location where the Defendant was apprehended.

17.    The south steps on the western side of the Capitol, where the Defendant was located with the firearm, fall within the Capitol Grounds as defined under 40 U.S.C. § 5102.

18.    No cellphone was located on the Defendant's person at the time of his apprehension.

19.    During an interview subsequent to his arrest, the Defendant indicated that he had left a cellphone, specifically an iPhone 14, as well as a laptop computer in the white Mercedes SUV.

20.    While reviewing the Defendant's property at USCP headquarters, USCP agents observed that the apparent body armor worn by the Defendant was a load-bearing, tactical-style plate carrier vest. Upon further inspection, it was determined that the inserted panels were not ballistically rated. During his custodial interview, the Defendant stated that the vest contained foam pads intended for airsoft use rather than ballistic-rated armor designed to provide protection against gunfire.

21.    At the time the Defendant entered the Capitol Grounds while carrying the firearm, he did so knowingly.

Search of the Defendant's Vehicle and Digital Devices Found

22.    On February 18, 2026, USCP law enforcement officers searched the white Mercedes SUV pursuant to a search warrant. The search warrant authorized the search of digital devices found in the vehicle for evidence relevant to violations of 40 U.S.C. § 5104(e)(1)(A)(i) (Unlawful Possession of a Firearm on Capitol Grounds or Buildings).

23.    During the search, USCP law enforcement seized a black Apple iPhone 14 in a black case, bearing serial number K2WCTJGYWC, and a black and gray HP EliteBook 820 G4 laptop, bearing serial number 5CG812038X.

24.    Subsequent searches of the files found on the black Apple iPhone 14 revealed materials which appeared to be child sexual abuse material ("CSAM"). During the review of the extraction of the cell phone recovered from the Defendant's vehicle, law enforcement found a Telegram chat between an account associated with the Defendant and another Telegram account. In the chat, the other account listed a number of files purporting to contain CSAM. The Defendant's account inquired about a price for one of the files. The Defendant's account then sent a receipt for a payment service indicating that he had made payment. The other Telegram account then provided the Defendant's account with a link to a Mega folder.

25.    Law enforcement was able to obtain the material in the linked Mega file and confirm that it contained CSAM. The Mega folder contained 159 files, 124 of which were confirmed as CSAM and 35 were child exploitative or age difficult. One of the videos located in the Mega folder was also found on the Defendant's cell phone.

26.     On the Defendant's phone, 15 videos and 52 pictures were confirmed as CSAM by law enforcement. One of the videos found on the Defendant's iPhone, titled telegram-cloud-document-2-5224358546241515303, was a thirty second long video which portrays an apparent prepubescent female with youthful characteristics, small frame, minimal breast development, and no visible pubic hair. The video begins with the child standing, only wearing a skirt, rubbing her exposed breasts. The child proceeds to sit on a bed when she lifts her skirt exposing her vagina. The child then pivots positioning herself in the prone position with her buttocks elevated, exposing her vagina and anus. The video concludes with the child utilizing both hands to spread her anus and vagina. Only one of the videos from the Mega download appeared to be duplicative of the files on his phone. There was additional child-exploitative and age-difficult material found on the Defendant's phone.

27.     A number of files in the Mega link and the Defendant's phone clearly depict material involved a prepubescent minor or a minor who had not attained the age of 12 years. There is additional material that appears to portray the sexual abuse or exploitation of an infant or toddler. For example, one of the videos found in the Mega link, titled VID_20200422422-012831_306, is a three minute and seventeen-second-long video which portrays the sexual abuse of an apparently incapacitated, prepubescent female with youthful characteristics, small frame, and no visible pubic hair, by an adult male. All through the video, the child appears to be disoriented, has drowsy eyes, and lacked the ability to move without assistance. The video begins with the child, wearing only a shirt, and an adult male, wearing only a skull-patterned balaclava, on a bed. The adult male appears to apply lubrication to his erect penis, then grasps the child to place her on his lap before he lies back. The adult male then forces his erect penis into the child's anus. The adult male, for a portion of the video, places his hands in the child's underarms, forcing her in an up-and-down movement

on his penis. The adult male, at another time, sits upright and places his hands on the child buttocks, forcing her, again, in an up-and-down movement on his penis, as the child appears to slump to the side. Another video from the Mega link, titled, VID-20190428-WA0058, portrays the sexual abuse of an infant female by an apparent adult male, recorded by an unseen third party. The video begins with the completely nude infant sitting on the seated lap of a shirtless adult male. The infant's legs are separated, with her left leg placed on a desktop and her right leg sustained by the adult male's hand. The camera operator then focuses on the infant's vagina and anus. The adult male proceeds to touch, splay, and compress the infant's vagina with his fingers.

28.    A third video found in the Mega link, titled VID-20200422_014144_110, is a one minute and fifty-eight-second-long video portraying the sexual abuse of a female toddler, displaying the physical characteristics of a toddler, including a diminutive stature and no visible pubic hair, by an apparent adult male. The video begins with the toddler in the prone position with her buttocks elevated. The toddler is wearing a shirt, and her pants are pulled down, displaying her vagina and anus. The adult male is touching the toddler's vagina with his fingers, then rubs and squeezed her buttocks with his hand. The adult male forcefully inverted the child to her back with her legs elevated when the adult male proceeds to touch, splay, and compress the toddler's vagina. The toddler is then observed in a flat, prone position when the adult male forces his erect penis into her vagina.

29.    This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged crimes. This Statement of the Offense fairly and accurately summarizes and describes some of the Defendant's

8

actions and involvement in the offenses to which the defendant is pleading guilty.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   */s/ Brendan M. Horan*
Brendan M. Horan
Special Assistant United States Attorney
N.Y. Bar No. 5302294
601 D Street, N.W.
Washington, D.C. 20530
(202) 730-6871
Brendan.Horan@usdoj.gov

_____
Carter Camacho

_____
Attorney for Defendant

9